**IN THE COURT OF APPEALS OF IOWA**

No. 19-2109
Filed April 1, 2020

**IN THE INTEREST OF W.E. and D.J.,**
**Minor Children,**

**R.J., Mother,**
        Appellant,

**J.E., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Daniel P. Vakulskas, District Associate Judge.

The mother and father separately appeal the termination of their parental rights to their two children. **AFFIRMED ON MOTHER'S APPEAL; REVERSED AND REMANDED ON FATHER'S APPEAL.**

Kelsey Bauerly Langel of Bauerly & Langel P.L.C., Le Mars, for appellant mother.

Jared Weber, Orange City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Debra S. De Jong of De Jong Law Firm, P.C., Orange City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., May, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

The mother and father separately appeal the termination of their parental rights to their children, W.E. and D.J. The juvenile court terminated both parents' rights pursuant to Iowa Code section 232.116(1)(d), (e), and (f) (2019). The father argues his rights were violated because he was not allowed to participate in most of the termination hearing. Additionally, he claims the juvenile court erred in refusing to admit one of his proposed exhibits, challenges the statutory grounds for termination, and argues termination is not in the children's best interests. The mother challenges the statutory grounds for termination, whether termination is in the children's best interests, and the juvenile court's refusal to apply a permissive factor to save the parent-child relationship. Additionally, she argues a six-month extension to achieve reunification is warranted.

We consider each appeal separately. Our review is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

**I. Father's Appeal.**

Questions and concerns regarding the father's mental health have been an ongoing issue in this case. Then, on November 18, 2019, a mental-health commitment order was issued for the father. The father remained out of custody.

When the father arrived to the November 27 termination hearing, a deputy was present in the courtroom to execute the pick-up order. Through his attorney, the father requested to stay and participate in the hearing with the deputy present and then be taken into custody to be committed after the hearing ended. The State did not resist. The juvenile court denied the father's request and denied "any motion to continue." The father was immediately taken by the deputy, and

then the termination hearing took place as scheduled. The father's attorney was present for and participated in the hearing.[1]

On December 3, the father filed a motion to reopen the record in the termination proceeding. Noting that the involuntary commitment action had been dismissed with a finding he was not a danger to himself or others, the father asked for the record to be reopened in the termination proceeding so he could testify and present evidence. The juvenile court granted the motion "for the sole purpose of allowing [the father] to testify" and stated, "Evidence (including witnesses) that was available on November 27, 2019 but otherwise not offered then will not be received by the court on December 6."

On appeal, the father maintains his rights were violated because he was not allowed to participate in most of the termination hearing.[2] He argues the court should have "allow[ed] him to participate under the supervision of the deputies, continue[d] the hearing until the pick-up order was resolved, or allow[ed] an alternative form of participation, such as a phone."

We understand the court's reluctance to countermand or modify the pick-up order, and we cannot say the court was required to allow the father to be

---

[1] The father's attorney cross-examined witnesses and introduced exhibits to be admitted.

[2] The father does not explicitly characterize his argument as one involving his due process rights. However, he cites to *In re M.D.*, 921 N.W.2d 229 (Iowa 2018), in which the supreme court considered whether a parent's due process rights were violated when they were only allowed to testify—not otherwise participate—in a termination hearing. Additionally, the State seems to understand the father's challenge to involve due process, as in its response to the father's petition on appeal, it cites to a number of cases regarding the due process rights of parents in termination proceedings. As in *M.D.*, the briefing is not perfect, but we understand the father's argument to be one involving his due process rights and treat it as such. *See* 921 N.W.2d at 232 n.2.

physically present during the proceeding. *See M.D.*, 921 N.W.2d at 234 ("The delay associated with a continuance of a hearing until the physical appearance of an incarcerated parent can be achieved could very well be contrary to the best interests of children and our nation's policy."). The father was not completely shut off from the proceedings; he was able to testify and introduce evidence after the court granted his motion to reopen the record. But he was not allowed to participate in the first day of the proceedings, during which the State presented its entire case for termination.

In *M.D.*, our supreme court held that a parent must be given more than just the opportunity to testify; they must be allowed to fully participate in a termination hearing. *Id.* at 235 ("[P]arents normally have unique and exclusive knowledge of evidence concerning the termination. After all, their conduct is at issue. The risk of error is too great if a parent does not have the opportunity to hear this evidence and to formulate a response to it."). We acknowledge that *M.D.* explicitly deals with the rights of an incarcerated parent. But we see no reason why its holding would not apply equally to the father, who was being held involuntarily under a court order at the time the scheduled termination hearing took place.

The options before the juvenile court in this case were different than those before the juvenile court in *M.D.* Here, it was possible the father was going to be released from his involuntary commitment shortly and would then be able to participate in the termination proceeding in person. On the other hand, the court here was faced with more of a developing situation—as opposed to the parent who was incarcerated and filed a motion to participate by telephone prior to the

hearing—which presumably made it impossible for the father to participate by phone.

Still, the father has a due process right to participate in the termination proceedings. Once the juvenile court decided to let the father be taken by the deputy, the court needed to continue the termination hearing or "provide an alternative process that allow[ed] the parent to review a transcript of the evidence offered at the hearing." *Id.* at 236. If the court decided to employ the latter process, the father had to be allowed to review a transcript of what occurred when he was unable to participate and then "be able to recall witnesses who testif[ied] for the state for additional cross-examination and . . . present other testimony and documentary evidence at [a later] hearing." *Id.* This additional process undoubtedly adds time to complete the termination proceedings, and we take no position which was the better option—granting the motion to continue the proceeding[3] or using alternative means to ensure the father his due process. *See id.* ("It is in the best interests of children for the court process to proceed without delay, but it is also in the best interests of children that their parents have a full and fair opportunity to resist the termination of parental rights."). But the court was required to do one of them. *See id.* at 237 ("[J]uvenile court judges must follow a different procedure moving forward.").

---

[3] From the transcript of the proceedings, it does not appear that the father or anyone else actually moved to continue the proceeding, but the court indicated, when it denied the father's request to stay and participate in the hearing, that it was also denying "any motion to continue at this point." Additionally, in its written termination order, the court included a section explaining its denial of the father's purported November 27 motion to continue. It is possible the father orally made the motion before the proceedings went on the record.

We reverse the termination of the father's parental rights and remand the case to the juvenile court for additional expedited proceedings in accordance with this opinion.

## II. Mother's Appeal.

### A. Statutory Grounds.

The juvenile court terminated the mother's parental rights to W.E., born in 2012, and D.J, born in 2014, pursuant to Iowa Code section 232.116(1)(d), (e), and (f). The mother challenges each of the statutory grounds. "When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm."[4] *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We consider whether termination was appropriate under Iowa Code section 232.116(1)(f) (2019), which permits the court to terminate parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

---

[4] Although we need to consider only one ground, we note that the juvenile court's termination of the parents' rights under paragraph (d) was inappropriate. The children were only adjudicated children in need of assistance (CINA) under section 232.2(6)(c)(2) (2017). "The grounds for a CINA adjudication do matter." *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). "For example, a CINA determination under section 232.2(6)(b) may lead to termination of parental rights under section 232.116(1)(d), whereas a CINA determination under section 232.2(6)(c)(2) cannot." *Id.*

The mother challenges the fourth element—whether the children could be returned to her care at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707 (defining "at the present time" as at the time of the termination hearing).

The Iowa Department of Human Services (DHS) became involved with this family this time in September 2017 upon allegations the parents were using marijuana and methamphetamine while caring for and engaging in physical fights in front of the children. The children were adjudicated CINA a few months later but remained in the care of the mother until August 2018, when she admitted she recently used marijuana and methamphetamine. From August 2018 through the termination hearing in November 2019, the mother did not complete a substance-abuse treatment program. Plus, she continued at least an on again, off again relationship with the father, in spite of DHS's concerns regarding the father's untreated mental-health issues[5] and ongoing domestic violence in their relationship.[6] At the termination hearing, she testified she was not currently in a relationship with the father, but she also admitted she was still in contact with him (in direct contrast to what she told workers), had just paid the father's utility bill, and could "not give an answer to [the question whether she would stay separate from the father], because [she] was not sure."

---

[5] The father completed two mental-health evaluations that diagnosed him with adjustment disorder, but when he was seen by a doctor during his involuntary commitment, he was diagnosed with paranoid schizophrenia.

[6] At the day of the scheduled termination trial, the mother detailed the domestic violence the father perpetrated against her in September 2019, right before the permanency hearing. Additionally, in May 2019, the father was arrested and charged with felony domestic abuse assault; the criminal court issued a no-contact order as a result. The court eventually canceled the order after the mother asked the court do so.

The mother recently obtained full-time employment and has made a home with family friends who would allow her to continue living in their home with her children. But the mother's lack of consistent follow through with mental-health therapy and substance-abuse treatment has left the issues of the mother's drug use and the violence in the parents' relationship unresolved—more than two years after DHS became involved. Because returning the children to the mother's care would put them at risk of further adjudicatory harm, we agree with the juvenile court that the grounds for termination pursuant to paragraph (f) have been met. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

**B. Best Interests.**

The mother argues termination of her rights is not in the children's best interests. *See* Iowa Code § 232.116(2). She notes that the relatives who have cared for the children throughout these proceedings do not intend to adopt them, so the children will be required to move to a new home with a new family. *Cf. id.* § 232.116(2)(b) (allowing the court to consider whether the child's foster family is able and willing to permanently integrate the child into the family). The termination of the mother's parental rights will cause upheaval for these children in the short-term. But the mother is unable to provide stability and a safe home for the children—not now and possibly not in the future. Becoming part of a family that can provide these things is in the children's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying "a child's safety and his or her need for a permanent home as the defining elements in a child's best interests"); *see also In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (requiring the court to use the structured best-interests framework

laid out in section 232.116(2), which includes considering "the best placement for furthering the long-term nurturing and growth of the child").

### C. Permissive Factor.

The mother argues the court should have applied the permissive factor in section 232.116(3)(c) to save the parent-child relationship. She maintains the acknowledged bond she shares with the children warrants the application of this factor. We disagree. The record shows the children are bonded to their mother, but the mother has the burden to establish that the termination of her rights will be detrimental to the children, and that any detriment outweighs the benefits the children would accrue from having a safe, stable home. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (providing that once the State proves a statutory ground for termination, "the parent resisting termination has the burden to establish an exception to termination under" section 232.116(3)); *see also In re K.M.*, 653 N.W.2d 602, 606 (Iowa 2002) ("Any detriment [the child] will suffer as a result of the severance of the parental bonds is more than outweighed by the benefits that will accrue from her placement in a safe, stable, and support environment.").

### D. Additional Time.

The mother argues she should be given an additional six months to work toward reunification with the children. She takes issue with the juvenile court's statement that she had two years to show progress and failed to do so—noting the children were only removed from her care in August 2018. But DHS became involved with the family in September 2017 and the children were adjudicated CINA in December 2017. Services were in place for the family—and specifically,

the mother—for months before the children's removal. The mother had approximately two years to address the issues that brought the juvenile court into this family's life. We cannot say more time would provide a different result. *See* Iowa Code § 232.104(2)(b).

We affirm the termination of the mother's parental rights.

**AFFIRMED ON MOTHER'S APPEAL; REVERSED AND REMANDED ON FATHER'S APPEAL.**